W. D. KELLY, IN BEHALF OF HIMSELF AND ALL OTHER CREDITORS OF E. C. McLAMB, v. E. C. McLAMB, HYMAN SUPPLY COMPANY, ET AL.

(Filed 5 October, 1921.)

**1. Receivers—Appointment Before Judgment.**

Where the plaintiff makes it properly to appear to the court that he is in imminent danger of loss by defendant's insolvency, or that he reasonably apprehends that the defendant's property will be destroyed, removed or otherwise disposed of by defendant pending the action, or that the defendant is insolvent, and it must be sold to pay his debts, or that he is attempting to defraud the plaintiff, a receiver for his property may be appointed before judgment. C. S., 861. Other instances pointed out by WALKER, J.

**2. Same—Liens—Conditional Sales—Cost and Expenses—Equity—Law.**

Where it appears that the defendant is insolvent and has left the State to avoid his creditors, including the plaintiff, and that a part of his property consisted of a cotton gin and planing mill and machinery purchased by him under a conditional bill of sale, duly recorded and constituting a first lien thereon, and the seller has acquiesced in an order appointing a receiver, and that he insure the property or employ a watchman to guard against its destruction by fire, the preservation of the property inures to the benefit of the seller holding the lien, and he may not successfully complain, either at law or in equity, of an order of court that he pay his

KELLY *v.* McLAMB.

proportion of the receivership cost and expenditure for the preservation of the property, especially as the receiver was appointed with his consent.

APPEAL by defendant from *Bond, J.,* at the February Term, 1921, of SAMPSON.

This action was brought to adjust certain liens of creditors on the property of their debtor, E. C. McLamb. It will give a clear idea of the case to set forth the allegations of the amended complaint, supplemented by certain facts not definitely stated therein. The complaint is as follows:

"The plaintiff, Walter D. Kelley, under leave of court first had and obtained, for his amended complaint and petition in the cause, alleges:

"1. He does hereby reiterate and reaffirm each and every allegation contained in his former complaint and petition in the cause, in the same manner and of like effect as if herein specifically set forth and declared.

"2. That this action was commenced on 24 November, 1920, the petition being filed on the same date, in which the appointment of a receiver was prayed for; and the plaintiff does further allege that at the time of the commencement of this action the defendant E. C. McLamb had fled the county, and, since said date, has kept himself concealed at some point unknown to the plaintiff, in order to avoid the service of process; that various summonses have been issued against McLamb, and the sheriff of Sampson County has been unable to serve any of them or locate him.

"3. That heretofore, on 26 November, 1920, at 9 o'clock in the morning, after this action had commenced, and after the receiver, M. E. Britt, had entered upon the discharge of his duties as such, and while the said E. C. McLamb was hopelessly insolvent, which fact was well known to the defendant, the Bank of Warsaw, said bank caused to be filed and recorded in the office of the register of deeds of Sampson County a certain mortgage deed, under the terms of which the defendant E. C. McLamb undertook to convey to the Bank of Warsaw all of the landed property belonging to him in the county of Sampson, the same consisting of eleven tracts of land, and forming practically his entire landed estate; which mortgage deed recites that the same is made for the purpose of securing several notes aggregating $150,000, loaned to the said E. C. McLamb by the Bank of Warsaw. The mortgage deed, dated 19 November, 1920, was duly probated and filed for registration on the date above named, and now appears of record in Book 356, page 416, of the register's office of Sampson County.

"4. The plaintiff is informed and believes, and upon such information and belief alleges, that, at the time of the execution of the mortgage, E. C. McLamb was indebted to the bank in a sum not exceeding $14,000, and having taken and accepted notes, secured by a mortgage deed, which

it had recorded, for $150,000, the Bank of Warsaw thereby now holds the proceeds of the notes and mortgage, amounting to $136,000, the property of the defendant E. C. McLamb, and now belonging to the receiver, M. E. Britt, to be administered by him for the benefit of the other creditors.

"5. The plaintiff further alleges that the defendant E. C. McLamb is the owner of $5,000, par value, of the capital stock of the Bank of Warsaw, which is now in possession of the bank, and that the stock is now a part of the assets of E. C. McLamb, and should be turned over to the receiver to be administered by him, together with the other property of McLamb, for the benefit of his creditors.

"6. The plaintiff further alleges that, at the time of the execution of the mortgage deed or immediately prior thereto, there was an agreement between McLamb and the Bank of Warsaw that in consideration of the execution and delivery of the mortgage deed the bank would assume and pay off all of the debts and liabilities of E. C. McLamb and save his creditors harmless; and that the mortgage deed and notes secured thereby were executed by E. C. McLamb and his wife pursuant to that understanding and agreement; and the plaintiff therefore alleges that in consequence of that agreement, followed by the acceptance and registration of the mortgage deed above referred to, the Bank of Warsaw is now justly indebted to M. E. Britt, the receiver appointed in this cause, in the sum of $136,000, which amount should be paid in order that it may be pro rated among the various creditors of E. C. McLamb.

"Wherefore, the plaintiff demands judgment against the Bank of Warsaw in conformity with the foregoing allegations."

Upon the pleading, that is, the complaint and answer, and upon affidavits, Judge George W. Connor, on 3 December, 1920, entered an order, not excepted to, in which is the following clause:

"It further appearing to the court that the defendant E. C. McLamb was the owner of a valuable gin and planer mill in the town of Clinton, which property is now lying idle and is subject to fire, and upon which there are various recorded liens, it is further ordered and adjudged that the receiver be and he is hereby directed to insure said property in some standard insurance company for such amount as he may deem proper, in order that the rights of creditors may be safeguarded and protected; and the receiver will pay out the first moneys coming into his hands, it being understood that the costs of said insurance is to be hereafter placed against such creditors of the said E. C. McLamb as the court may deem just and proper; and the receiver, if he shall be so advised by counsel, is hereby authorized and empowered to employ a night watchman to guard said property during the continuance of this receivership, or until the property shall be sold under the future orders of the court."

ADDITIONAL FACTS.

E. C. McLamb, one of the defendants, purchased a lot in the town of Clinton, and during the early part of the year 1920 he set up on the lot a cotton gin and planing mill. Certain parts of the machinery, including boilers, engines, planers, etc., were purchased from the defendant Hyman Supply Company, under conditional sale contracts, all of which are admitted to have been properly recorded in Sampson County, prior to the institution of this action, and at the date of the issuance of the summons in this cause, E. C. McLamb was indebted to the Hyman Supply Company in the sum of $7,471.76. The defendant McLamb became indebted to various and sundry parties in amounts aggregating about $150,000; some of the debts being secured and others being in the shape of notes and open accounts. Upon the petition of the plaintiff an order was entered by Judge George W. Connor, on 23 November, 1920, appointing M. E. Britt as temporary receiver of the mill property above referred to, and the receiver thereupon took into his custody and possession all of the machinery, etc., upon which the defendant Hyman Supply Company held a lien.

On 28 January, 1921, the Hyman Supply Company moved the court for an order requiring the receiver to surrender to it all of the property referred to in the conditional sale contracts, or that the receiver be directed to sell the same and permit the Hyman Supply Company to bid in the property, its bid to be credited on its account against E. C. McLamb. The receiver filed an answer to the motion, and at Kenansville, N. C., on 30 December, 1920, Judge Connor entered an order making the receivership permanent, and ordering the receiver to sell all of the property, including the property upon which the Hyman Supply Company had a lien, and in the order it was expressly provided, as follows: "Any of the lien creditors may bid on said property, the lien creditors having the right to bid in the property covered by their respective liens, and apply such bid on the debts due them, and the balance, if any, shall be paid over to the receiver, to be held subject to the further orders of the court."

In the order of Hon. George W. Connor, judge, dated 3 December, 1920, the court having before it the pleadings, including the answer of the appellant, directed the receiver to insure the property, if possible, and if no insurance could be secured, to employ a night watchman to guard and protect the same, and this item of expense, together with the taxes upon the property as shown on the expense account of the receiver, is claimed by plaintiffs to be clearly such a liability as should be charged against the appellant, the Hyman Supply Company, whose property was protected thereby, and which was asked for by the attorneys representing the appellant.

11—182

M. E. Britt was also appointed a referee and directed to ascertain the amount of the various debts, the priority of liens, etc., and at the same time it was adjudged that the lien of Hyman Supply Company was prior to all other claims. The receiver made sale of the property, after legal notice, on 26 March, 1921, at which time Hyman Supply Company, acting under the authority of the order of sale as made by Judge Connor, purchased all of the property covered by its conditional sales contract, for the sum of $7,400. Said sale was reported to the court and duly confirmed, and a bill of sale made to Hyman Supply Company by said receiver.

At May Term, 1921, the receiver and referee made a report showing that at the time of said sale E. C. McLamb was indebted to Hyman Supply Company in the sum of $7,471.76, that the bid of the Hyman Supply Company on the property was $7,400, so that there is still a balance due said company by the defendant McLamb. The receiver also reported that other lien creditors had bid in certain property covered by their respective liens; that the total bids amounted to $26,500, all of the bids being made by creditors who held liens and who were acting under the order of Judge Connor, made at Kenansville, N. C., on 30 December, 1920.

The receiver presented to the court an itemized expense account, covering the costs of night watchman, commissions, etc., amounting in the aggregate to $1,164.14, and requested the court to charge the sum against the several purchasers at the sale in the proportion of their respective bids. The Hyman Supply Company filed exceptions to this report, and resisted the payment of any part of the costs and expenses of the receivership, because there was still a balance due it under its recorded contracts. The exceptions were overruled and judgment entered, directing the Hyman Supply Company to pay into the clerk's office a sum of money equivalent to 74/265 of said costs and expenses, amounting by actual calculation to the sum of $325.08. To this judgment the defendant Hyman Supply Company excepted and appealed.

All of the material facts necessary for a proper determination of the question at issue are practically admitted in the case on appeal.

*Henry E. Faison and Fowler & Crumpler for plaintiffs.*
*Grady & Graham for defendants.*

WALKER, J., after stating the material facts: This, it seems to us, was a typical case for the appointment of a receiver and the order of Judge Connor was eminently proper, and there appears to have been no serious objection to it, if any at all. We have held that a receiver will be appointed before judgment where plaintiff shows imminent danger

of loss by defendant's insolvency (*Bank v. Bridgers,* 114 N. C., 381; *Mahoney v. Stewart,* 123 N. C., 106), or where there is reason to apprehend that the subject of the controversy will be destroyed, or removed, or otherwise disposed of by defendant pending the action (*Ellett v. Norman,* 92 N. C., 519; *Thompson v. Silverthorne,* 142 N. C., 12); or where defendant is insolvent and all property must be sold to pay debts (*Machine Co. v. Lumber Co.,* 109 N. C., 576); or where it is alleged that defendant is attempting to defraud plaintiff (*Stern v. Austern,* 120 N. C., 107; *Pearce v. Elwell,* 116 N. C., 595). There are, of course, other cases where a receiver may, and will be, appointed by the court, as in the case of a trust, to completely execute or to facilitate its execution (*Rosseau v. Call,* 169 N. C., 173), or where a foreign corporation is insolvent, the court may appoint a receiver to protect resident creditors and for other purposes (*Holshouser v. Copper Co.,* 138 N. C., 248; *Silk Co. v. Spinning Co.,* 154 N. C., 442), and there are still other instances where the power will be exercised, but those above enumerated will suffice here. The statute provides: A receiver may be appointed:

"1. Before judgment, on the application of either party, when he establishes an apparent right to property which is the subject of the action and in the possession of an adverse party, and the property or its rents and profits are in danger of being lost, or materially injured or impaired; except in cases where judgment upon failure to answer may be had on application to the court.

"2. After judgment, to carry the judgment into effect.

"3. After judgment, to dispose of the property according to the judgment, or to preserve it during the pendency of an appeal, or when an execution has been returned unsatisfied, and the judgment debtor refuses to apply his property in satisfaction of the judgment.

"4. In cases provided in chapter entitled 'Corporations' in the article 'Receivers'; and in like cases, of the property within this State of foreign corporations. The article 'Receivers,' in the chapter entitled 'Corporations,' is applicable, as far as may be, to receivers appointed hereunder." (C. S., vol. 1, sec. 860), and the cases applicable will be found well arranged in the notes to that section. In certain cases the court, in its discretion, may allow a bond to be given by any party who deems that he may be prejudiced by the appointment of a receiver, in lieu of such appointment. C. S., 861.

The very ground upon which this appointment was made was the danger of the loss or destruction of the property, and all of the parties were surely interested in its preservation, and equally, or at least proportionately, benefited by it. Can it be that in either law, or surely in equity, the party who reaps the benefit should not bear his just share of the burden? We clearly think not. The general subject of costs and

expenses allowable to a receiver by court of chancery is fully discussed in High on Receivers (1 Ed. of 1894), secs. 796 to 810. It is said there, in sec. 796: "The appropriate method of procedure is to have his compensation fixed by the court, to be allowed out of the assets in his hands, and the amount thus determined to be due him may be taxed as costs in the action." And again, in the same section, at p. 729: "If, however, the appointment of the receiver was proper in the first instance, even though plaintiffs do not ultimately prevail in the suit, it is within the discretion of the court to allow the receiver payment for his services and expenses out of the proceeds of the litigation, and an appellate court will not interfere with the exercise of such discretion when it has not been abused." In *French v. Gifford*, 31 Iowa, 428, *Judge Miller* states the rule in such cases very lucidly, as follows: "It is insisted by plaintiff's counsel that the compensation of the receiver should be paid out of the fund of which he had the custody and charge, and that he should be permitted to retain the same therefrom. Numerous cases have been cited to show that such is the uniform practice. Upon an examination of these cases it will be found that in every case there was no question made as to the legality or propriety of the appointment of the receiver; that, in each case, the receiver closed up the business and settled his accounts in pursuance of his appointment. The receivership, in each case, was for the benefit of those interested in the fund, and he was paid therefrom, which is only another method of apportioning the costs upon those entitled to the fund. The only case which has been brought to our attention, in which the order appointing the receiver was set aside, is the case of *Verplanck v. The Mercantile Ins. Co.*, 2 Paige, 438, and in that case the chancellor ordered the receiver to turn over all the property, without allowing him any commissions therefrom. We think it would be an unjust and inequitable rule if, in all cases, the receiver should be entitled to his compensation from the fund in his hands, without reference to the legality of his appointment. Under the operation of such a rule, innocent persons might be made to suffer a great loss. The general rule as to costs, both at law and in equity, is that they shall be adjudged to the successful, and against the unsuccessful party. Rev., 3449. And they will be so adjudged, unless there exists some equitable consideration to justify a different disposition, or the case is otherwise provided for by law. In cases like the one under consideration, we may adjudge the costs to one or either of the parties, or apportion them." The Court accordingly directed that the fund be charged with one-third of the receiver's compensation, and the plaintiff with the remaining two-thirds. And this accords with our law. The appellant Hyman Supply Company unfortunately misunderstands, or misconstrues, the nature of the essential facts which clearly impose upon it the duty of supplying

its share to the general fund for the payment or satisfaction of the costs and expenses. It has received a clear benefit by having the property protected to which it looked for the payment of its claims. The receiver insured the same, or kept a watchman to guard it, so as to prevent its destruction by fire, or depredations upon it by evil-minded persons. The receiver has, besides, sold the property by agreement of the parties, and the proceeds have been applied to the payment of the debts, the plaintiff receiving the major part, having a prior lien. The receiver was required to give bond for the faithful discharge of his official duties, and to keep his accounts, making proper entries from time to time. There is no suggestion that he has not been energetic in the performance of his trust and faithful in all things, and there is not the slightest impeachment of him in respect to his dealings and transactions as receiver. Why, then, should he not be compensated by the parties? It is certainly just and equitable that he should be, and the law usually follows equity in this respect and adjudges that the laborer is worthy of his hire. There is no objection to the amount of the costs and expenses or to any item of the account. The objection goes entirely to the right to recover anything of the appellant. We conclude that it is not only liable to contribute to paying the receiver, but that Judge Bond (acting in furtherance and final execution of Judge Connor's order, to which no exception was taken) has properly and equitably apportioned the total amount of costs and expenses to be paid, among the respective parties, and appellant should be content therewith.

The case of *Humphrey v. Lumber Co.*, 174 N. C., 514, is not applicable to this case, where the facts are different. The receiver here was appointed with the consent of the Hyman Supply Company and for the protection of its property, if he was not appointed at its request, and for its benefit, which benefit it received, and of which the supply company availed itself as appears in the record. If it voluntarily receives the benefit, it must bear the burden. In this respect, if not in others, our case essentially differs from the *Humphrey case, supra.* Not only should the supply company pay its fair proportion of the costs and expenses because it consented to the receivership and took benefit therefrom, but because the property on which it had a lien was exposed to great danger, E. C. McLamb having taken refuge in flight, leaving the property without any keeper, and in the throes of hotly contested litigation, thereby enhancing the danger of destruction by fire and idle intruders, and increasing the temptation to injure or destroy it. A receivership was needed more by the supply company, and it derived greater advantage therefrom, than any one else.

There being no error, we decline to reverse or modify the judgment.

Affirmed.